UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY BICKING,<br><br>                 Plaintiff<br><br>   v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br><br>                 Defendant. | CIVIL ACTION NO. 3:24-CV-00422<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a Motion for Protective Order filed by Plaintiff Guy Bicking ("Bicking"). (Doc. 11). Because Bicking has failed to establish good cause, the Motion will be denied and Pennsylvania Department of Corrections ("DOC" or "Defendant") will file an answer to the Complaint.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Bicking, who is an inmate currently housed at the State Correctional Institution Benner ("SCI-Benner") in Bellefonte, Pennsylvania, initiated this action by filing a Complaint, which was received and docketed by the Court on March 12, 2024. (Doc. 1). Bicking then paid the filing fee in full, and the Court forwarded the waiver of service form to Defendant. (Doc. 4; Doc. 5). On June 3, 2024, the Court received and docketed Bicking's Motion for Protective Order. (Doc. 11). Bicking is requesting that the Court order Defendant to send all filings to him directly at SCI-Benner without sending documents through the third-party vender Smart Communications. (Doc. 11). Bicking alleges that discovery materials will include his medical records, and sending such records through Smart Communications is a

violation of federal law. (Doc. 11). Defendant filed a brief in opposition on July 17, 2024. (Doc. 16). The Court will now address the pending Motion.

**II.  DISCUSSION**

    A.  FEDERAL RULE CIVIL PROCEDURE 26(C) STANDARD

Federal Rule of Civil Procedure 26(c) allows a district court to enter a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Protective orders are "intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

The party seeking a protective order has the burden of "justifying the confidentiality of each and every document sought to be" sealed. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d. Cir. 2019) (citing *Pansy*, 23 F.3d at 786-87). The party seeking a protective order over discovery material "must demonstrate that 'good cause' exists for the order." *In re Avandia*, 924 F.3d at 671 (citing *Pansy* 23 F.3d at 786). In turn, "good cause" means that "disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity." *Pansy,* 23 F.3d at 786 (quoting *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d. Cir. 1984)).

The Third Circuit has set forth various factors, "which are neither mandatory nor exhaustive" for district courts to consider when determining whether good cause exists and whether, after analysis, a court should issue a protective order:

    1. whether disclosure will violate any privacy interests;

    2. whether the information is being sought for a legitimate purpose or for an improper purpose;

3. whether disclosure of the information will cause a party embarrassment;

4. whether confidentiality is being sought over information important to public health and safety;

5. whether the sharing of information among litigants will promote fairness and efficiency;

6. whether a party benefitting from the order of confidentiality is a public entity or official; and

7. whether the case involves issues important to the public.

*In re Avandia*, 924 F.3d at 671 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). Bicking's brief in support addresses these factors, which an emphasis on the initial factor of whether disclosure will violate any privacy interests. (Doc. 12).

### B. DEPARTMENT OF CORRECTIONS POLICY

In September 2018, the DOC changed its mail policy regarding, among other things, how incoming privileged and nonprivileged mail was handled. *Woodell v. Pa.D.O.C. Secretary of Corrections*, No. 18-4430, 2020 WL 2841380 at*10 (E.D. Pa. June 1, 2020). According to the DOC press releases, the changes were implemented to curb entry of illicit drugs into state prisons through the use of drug-soaked inmate mail. *See Woodell*, 2020 WL 2841380 at*10. Under the new policy, nonprivileged prisoner mail was to be sent to the DOC's contracted processor, Smart Communications, in St. Petersburg, Florida, who would scan the nonprivileged correspondence and provide an electronic copy that would be printed and delivered to the prisoners at their respective facilities. *See Travillion v. Pennsylvania Dep't of Corrections*, No. 1:18-CV-02075, 2023 WL 6796538 at *2 (M.D. Pa. Oct. 13, 2023) (describing 2018 DC-ADM 803 mail policy). This Court has previously summarized the 2018 policy concerning privileged correspondent:

> As for "privileged correspondence," the following system was implemented: (1) incoming privileged mail would be opened and inspected for contraband in the inmate's presence; (2) the incoming privileged correspondence would then be photocopied in the inmate's presence and a photocopy of the legal mail would be provided to the inmate; (3) prison officials would log the privileged correspondence in the "Legal Mail Log," which the inmate had to sign to receive the mail; (4) the original incoming privileged correspondence would then be placed into a sealed envelope inside a lockbox, ultimately to be "securely and confidentially destroyed."

*Travillion*, 2023 WL 6796538 at *2.

The constitutionality of this policy was challenged in federal court, and the DOC agreed that, beginning on April 6, 2019, the copying and retention of inmates' privileged correspondence would end. *See Pa. Institutional L. Project v. Wetzel*, No. 18-cv-2100, Doc. 1 (M.D. Pa. Oct. 30, 2018). Currently privileged mail may be sent directly to the inmate at the institution where he is housed. *See* Commw. of Pa., Dep't of Corr., *Policy Statement* DC-ADM 803: Inmate Mail & Incoming Publications, §§ 1(D)(3) (Aug. 10, 2020). Incoming privileged mail includes, *inter alia*, mail from a court as well as "[m]ail from an inmate's attorney that is either hand-delivered to the facility by the attorney or delivered through the mail system." DC-ADM 803: Inmate Mail & Incoming Publications Procedures Manual Glossary of Terms.

The use of Smart Communications for nonprivileged correspondence, however, remains unchanged of the DOC's current mail system. *See* DC-ADM 803: Inmate Mail & Incoming Publications, §§ 1(A)(3), 1(C)(1)-(5). DC-ADM 803 provides that "[a]ll incoming, <u>non-privileged</u> inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate mail processing center," which is the Smart Communications center located in St. Petersburg, Florida. This court has consistently held that mail addressed to a plaintiff inmate from a defendant's attorney is nonprivileged. *See e.g.*

4

*Dewald v. French*, No. 1:22-CV-00317-JPW-EW, Doc. 86 (M.D. Pa. Dec. 4, 2023); *Spotz v. Wetzel*, No. 1:21-CV-01799, 2022 WL 743874 (M.D. Pa. Mar. 11, 2022).

### C. B<small>ICKING</small>'<small>S</small> M<small>OTION</small>

Here, Bicking is requesting that the court enter a protective order directing the DOC to treat nonprivileged mail from Defendant's attorney as privileged mail and asserts that failure to do so through discovery will violate the Health Insurance Portability and Accountability Act ("HIPPA") if medical records are forwarded through Smart Communications. (Doc. 11; Doc. 12). In support of his assertions, Bicking cites to 15 U.S.C. § 6801 as requiring protective orders when medical records will be disclosed during the course of legal proceedings. (Doc. 12, at 2). However, the court finds that Bicking has failed to demonstrate good cause pursuant to *In re Avandia* to justify the need of a protective order.

First, the Third Circuit has upheld a finding that the DOC's use of a third-party mail system does not violate HIPPA. *Twitty v. Barns*, No. 22-2801, 2023 WL 3409066 at *2 n.6 (3d Cir. May 12, 2023). Furthermore, DC-ADM 803 requires incoming correspondence to be securely maintained for forty-five days and then securely destroyed unless otherwise directed by the DOC. DC-ADM 803 § 1(C)(4). Additionally, the court notes that pursuant to DC-ADM 003, Bicking can view his medical records directly from the DOC by submitting a form DC-135A. *See* DC-ADM 003. Therefore, Respondent may not be required to send Bicking's medical records through Smart Communications.

Bicking's reliance on 15 U.S.C. § 6801 is misplaced as it applies to Federal banking agencies as set forth in 15 U.S.C. § 6805(a), and not the DOC, a state agency.

5

**III.    CONCLUSION**

For the foregoing reasons, Bicking's motion for a protective order will be denied and Defendant will be ordered to file an answer to the complaint.

An appropriate order follows.

Dated: October 1, 2024                                                      *s/ Karoline Mehalchick*
                                                                                              **KAROLINE MEHALCHICK**
                                                                                              **United States District Judge**