UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUY BICKING,<br><br>                Plaintiff<br><br>    v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br><br>                Defendant. | CIVIL ACTION NO. 3:24-CV-00422<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to compel filed by Plaintiff Guy Bicking ("Bicking"). (Doc. 48). Also pending is a motion for an extension of time to file dispositive motions filed by the Pennsylvania Department of Corrections ("DOC") (Doc. 71), a motion to for sanctions filed by Bicking (Doc. 74), a motion to amend/correct Defendant's answer to preserve their jury demand (Doc. 76), a motion for an extension of time to file mediation position by the DOC (Doc. 77), a motion for judgment on the pleadings filed by the DOC (Doc. 78), and a motion for an extension of time to file a brief in opposition to Bicking's motion for sanctions. (Doc. 80). The Court will deny Bicking's motion to compel, resolve the pending motions that ripe, and set forth a briefing schedule for the motions pending adjudication.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Bicking, who is an inmate currently housed at the State Correctional Institution Benner ("SCI-Benner") in Bellefonte, Pennsylvania, initiated this action by filing a Complaint alleged violations of the Americans with Disabilities Act ("ADA") by the DOC, which was received and docketed by the Court on March 12, 2024. (Doc. 1). Bicking then paid the filing

fee in full, and the Court forwarded the waiver of service form to Defendant. (Doc. 4; Doc. 5).

Following some extensions by the Court, the DOC answered the Complaint on November 22, 2024. (Doc. 24). This answer was amended com February 6, 2025 (Doc. 35).

The Court filed its initial scheduling order on December 10, 2024 with a fact discovery deadline of February 10, 2025 and dispositive motions deadline of March 10, 2025. (Doc. 26.) Following multiple motions for additional time, the Court had extended the deadlines to June 30, 2025 and July 31, 2025 respectively. (Doc. 47). In the last order extending the fact discovery deadline to August 29, 2025, the Court did not extend the dispositive motions deadline. (Doc. 49). Therefore, under Fed. R. Civ. P. 56(b), the deadline for any motion for summary judgment was September 29, 2025.

On June 27, 2025, Bicking filed a motion to compel discovery setting forth four requests for production that he viewed as not properly filled by the DOC. (Doc. 48). The Court received and docketed the brief in support of his motion on July 15, 2025 that addresses only one of the four requests for production. (Doc. 53)[1]. Following an order of the Court requiring a response by November 17, 2025, the DOC filed a brief in opposition on at 12:35 a.m. on November 18, 2025. (Doc. 52; Doc. 67; Doc. 68[2]).

---

[1] Because Bicking is proceeding in this matter pro se, the Court will liberally construe his filings and consider the arguments he set forth in his motion to compel despite the fact that these arguments were not addressed in his brief in support. *See Estelle v. Gamble, 429 U.S. 97, 106 (1976).*

[2] Doc. 68 is a duplicate of Doc. 67, except Doc. 68 was filed with multiple attachments.

On October 21, 2025, the Court received and docketed Bicking's request for an appointment of a settlement officer. (Doc. 61.) On October 23, 2025, the Court ordered the DOC to respond to Bicking's request by November 6, 2025. (Doc. 63).

On December 4, 2025, new counsel was appointed for the DOC. (Doc. 70).

On December 10, 2025, the DOC filed a motion for an extension of time to file their motion for summary judgment. (Doc. 71).

On December 31, 2025, Bicking filed a motion for sanctions against the DOC alleging that the DOC failed to respond to the motion to compel by the November 17, 2025 deadline set forth by the Court and that it failed to respond to his request for a settlement officer. (Doc. 74; Doc. 75).

On January 6, 2026, the DOC filed a motion to amend their answer so as to preserve their right to a jury trial. (Doc. 76).

On January 13, 2026, the DOC filed a motion for an extension of time to file mediation position, a motion for judgment on the pleadings, and a motion for extension of time to file a brief in opposition to the pending motion for sanctions. (Doc. 77; Doc. 78; Doc. 80).

The Court will now address the pending motions that are ripe and address the briefing schedule of those not yet ready for adjudication.

## II. DISCUSSION

### A. BICKING'S MOTION TO COMPEL

**1. Standard**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(1); *see also Democratic Nat'l Committee v.*

3

*Republican Nat'l Committee*, 2019 WL 117555, at *2 (3rd Cir. Jan. 7, 2019) ("The court may limit discovery to ensure its scope is proportional to the needs of a case."). As such, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court. *In re Find Paper Antitrust Litg.*, 685 F.2d 810, 817–18 (3d Cir. 1982); *see* Fed. R. Civ. P. 26(b)(2)(C).

      A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. Fed. R. Civ. P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense; the burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

      On January 9, 2025, Bicking served a request for production of documents on the DOC. (Doc. 74, at 1). The DOC states that this request for production of documents was received on January 13, 2025. (Doc. 67, at 3). On April 11, 2025, Bicking received the DOC's initial production of documents dated April 1, 2025 and included all Bicking's medical records. (Doc. 74, at 1; Doc. 67, at 3-4; Doc. 68-2). On May 9, 2025, the parties conferred in a telephone conference in an attempt to resolve discovery issues. (Doc. 67, at 3; Doc. 74, at 1). The DOC states that at the conference Bicking agreed to send additional information to narrow the scope of the discovery requests made in January. (Doc. 67, at 3.)

On June 27, 2025, Bicking filed the instant motion to compel. (Doc. 48). On November 14, 2025, the DOC provided supplemental responses to the request for production of documents. (Doc. 68-3).

Bicking appears to be challenging four responses to his January request for production of documents, which he identifies as response numbers one, four, six, and seven. (Doc. 48; Doc. 53). The Court will now address each of Bicking's challenges in turn in consideration of the supplemental production of documents received after the filing of his motion to compel.

### 2. Response One

Bicking's request for production is as follows:

> All documents, including but not limited to, E-mails, written correspondence, electronically stored information, and minutes of meetings at which anyone discussed plaintiff's medical condition, disability accommodation request, and/or plaintiff's refusal of medical treatment. This shall include communications, of any type, between staff at SCI Smithfield and the Defendant's Bureau of Health Care Services (BHCS) as well as from BHCS to SCI Smithfield from June 23, 2021 through January 12, 2023.

(Doc. 68-1, at 1). In the April 1, 2025 response, the DOC raised the following four objections: (1) the request is unclear, vague, and subject to multiple interpretations; (2) the request is overly broad, burdensome, and disproportionate to the needs of the case; (3) the request seeks compunctions or other documents that are protected by the attorney-client privilege, work product doctrine, or other privilege; and (4) the request encompasses documents that contain information related the Bicking another inmates in the same document. (Doc. 53, at 4-6; Doc. 68-2, at 4-6). As an answer, the DOC stated that it provided Bicking's medical records from May 2019 to May 2024. (Doc. 53, at 7; Doc. 68-2, at 7).

In his motion to compel, Bicking argues that the request is not vague or unclear and he provides a list of 15 specific communications "regarding plaintiff and would not span this length of time had the defendant acted appropriately in July of 2021." (Doc. 48, at 3-4). It is unclear if he has documents concerning the 15 specific communications or if he is requesting those documents. Bicking also states that he is not seeking records of any other inmates "as those records do not bear on the medical terrorism inflicted on plaintiff by the defendant." (Doc. 48, at 4). He further complains about the volume of records the DOC had already provided, "[t]he defendant needlessly dumped documents from May 2019 through May 2024, which total over 1,000 pages of predominately non-responsive records." (Doc. 48, at 5.) Bicking does not address this request in his brief in support. (Doc. 53).

Here, it is unclear to the Court what precisely he is seeking that was not provided by the DOC in their production of documents. The DOC provided Bicking his medical records for the period he requested. Furthermore, the Court notes that in the November 14, 2025 supplemental response, the DOC, while maintaining their objections[3], produced additional correspondence, the DOC's ADA file for Bicking, and a declaration of the Secretary of the DOC, Laurel R. Harry. (Doc. 38-3, at 7). Therefore, without a clearer request of the documents that the DOC failed to produce and a statement as to whether the supplemental productions fulfilled any of the request, the Court is unable to make a determination as to whether the DOC is required to produce additional evidence at this time.

---

[3] The DOC provided a fifth objection that the request "seeks to invade the deliberate process privilege of the Defendant Department of Corrections by requiring the disclosure of confidential deliberations of law or policy making reflecting opinions, recommendations, or advice." (Doc. 68-3, at 6).

3. **Response Four**

Bicking's request for production is as follows: "A copy of any of defendant's Form DC-121, Extraordinary Occurrence Reports, concerning plaintiff between June 27, 2021 and January 12, 2023." (Doc. 68-1, at 3). In the April 1, 2025 response, the DOC provided the following two objections: (1) the request is overly broad, burdensome, and disproportionate to the needs of the case; and (2) the request seeks confidential records. (Doc. 68-2, at 9). As an answer the DOC, without waiving the above objections, stated that it did not have any documents responsive to the request. (Doc. 68-2, at 10). This response did not change in the November 14, 2025 supplemental production. (Doc. 68-3, at 11).

In his motion to compel, Bicking disagrees with the DOC's objections:

> There is nothing overly broad, burdensome or disproportionate about this request. The defendant has a Procedure Manual, 13.1.1, that states if a life-threatening medical condition exists and treatment is refused, a Form DC-121, Extraordinary Occurrence Report must be prepared. Since the defendant states no such reports exist, there must not have been any life-threatening medical condition involved and should have so stated.

(Doc. 48, at 5). Again, Bicking's response does not specifically seek the production of any document. Instead, he appears to be seeking an admission that there was no life-threating medical condition. Seeking an admission is not the purpose of a request for production of documents. Such a response is properly elicited through a request for admission under Fed. R. Civ. P. 36. Furthermore, the Court cannot order the DOC to produce a document that does not exist. Therefore, Bicking's motion to compel a response to his request for production will be denied.

4. **Response Six**

Bicking's request for production is as follows: "A copy of any and all assessments, evaluations, interviews, or memoranda conducted pursuant to defendant's policy DC- ADM

006, Reasonable Accommodations for Inmates with Disabilities, Section 2.B, filed between July 14, 2021 and January 12, 2023." (Doc. 68-1, at 3). In the April 1, 2025 response, the DOC asserted three objections: (1) the request is overly broad, burdensome, and disproportionate to the needs of the case; (2) the request seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or other privilege; and (3) the request encompasses documents that contain information related to Bicking and other inmates in the same document. (Doc. 68-2, at 11-12). As a form of answer the request, the DOC refers to the medical records from May 2019 and May 2024. (Doc. 68-2, at 12).

In the motion to compel, Bicking states that as part of the documents provided in response to this request, the DOC provided redacted pages (DOC000482-DOC000483) asserting privilege. (Doc. 48, at 5.) Bicking asserts that any privilege has been waived due to the delay in responding and for failing to include a declaration from the Secretary of the DOC stating why the privilege applies. (Doc. 48 at 5-6.) Additionally, Bicking alleges that these documents "go to the heart of the claim that plaintiff's request for a reasonable accommodation was impermissibly denied and may also support his coercion and retaliation claims." (Doc. 48, at 6.) He seeks to have these documents unredacted. (Doc. 48, at 6). This is also the focus of Bicking's brief in support of his motion in which he includes a copy of the redacted document. (Doc. 53; Doc. 53-3).

As to Bicking's assertion that the DOC has waived all privileges based on their late response, the Court highlights that Bicking himself states that he and defense counsel have had ongoing correspondences that included multiple letters and a status conference that culminated in a proposed production date of June 13, 2025. (Doc. 53, at 2). The DOC filed a

8

motion for an extension of time stating that an additional sixty days were required to complete discovery. (Doc. 49). This Court had entered a standing order in August of 2025 staying this case until September 22, 2025 due to a cyber attack on the Pennsylvania Attorney General's Office. Standing Order 2025-05 (M.D. Pa. August 21, 2025). With the supplemental production of responses, the DOC provided an affidavit of its Secretary Laurel Harry asserting the privileges along with the privilege logs for both the April 1, 2025 and the November 14, 2025 production of documents. (Doc. 68-4; Doc. 68-6; Doc. 68-7). Here, the Court finds evidence that the parties were in contact regarding discovery, and while there was perhaps some delay on the part of the DOC in the production of documents, none of the delay appears to be ill intended. Instead, it appears that the DOC was making attempts to narrow the scope of discovery with additional information from Bicking and making the required disclosures amid an ongoing data hack. Therefore, the Court will not deem the privileges waived as a sanction for any delay in discovery.

The document at issue (DOC000482-DOC000483) is redacted with a statement of "deliberative-process." (Doc. 53-3). The privilege logs identify the privilege as "Attorney-Client privilege and work product including hand written note." (Doc. 68-6; Doc. 68-7). The DOC states that all three privileges apply to this document, which the DOC identifies as "the April 25th Memo." (Doc. 68, at 19).

The Federal Rules of Evidence provide that evidentiary privileges "shall be governed by the principles of the common law . . . in the light of reason and experience." Fed. Rule Evid. 501; *U.S. v. Jicarialla Apache Nation,* 564 U.S. 162, 169 (2011). The attorney-client privilege is the oldest of the privileges for confidential communication known to the common law. *Jicarialla Apache Nation,* 564 U.S. at 169 (citation omitted); *Montgomery County v.*

9

*MicroVote Corp.,* 175 F.3d 296, 304 (3d Cir. 1999). The objectives of the attorney-client privilege apply to governmental clients. *Jicarialla Apache Nation,* 564 U.S. at 169 (citation omitted). The Supreme Court has held that "unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." *Jicarialla Apache Nation,* 564 U.S. at 170.

The work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (quoting *In re Grand Jury (Impounded),* 138 F.3d 978, 981 (3d Cir. 1998)). Courts in the Third Circuit apply a two-part test in determining whether the work-product doctrine applies: (1) whether litigation could reasonably have been anticipated; and (2) whether the documents were prepared primarily for the purpose of litigation. *Crawford v. Corizon Health, Inc.*, No. CV 17-113, 2018 WL 3361147, at *2 (W.D. Pa. July 10, 2018) (citing *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306–07 (D.N.J. 2008)). "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work-product doctrine." *Crawford*, 2018 WL 3361147, at *2 (quoting *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990)).

Federal common law recognizes the deliberative-process privilege, which shields government documents that were created in anticipation of an agency decision. *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150-54 (1975); *EPA v. Mink*, 410 U.S. 73, 89, n.16 (1973)).

These privileges are not absolute. Even if the Court determines that the privileges apply, Plaintiffs may show that the privileges should be overcome. Though the party asserting a privilege bears the initial burden of establishing that the privilege applies, the party seeking discovery ultimately must demonstrate why privileged material should nevertheless be produced. *In re Grand Jury (OO-2H)*, 211 F. Supp. 2d 555, 557 (M.D. Pa. 2001) (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)). The Third Circuit has adopted the balancing act set forth by the United States Court of Appeals for the District of Columbia:

> [I]n balancing the interests, [district courts] should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

*Reland Soccer Club, Inc. v. Department of Army of U.S.*, 55 F.3d 827, 853–54 (3d Cir. 1995) (citing *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468, n. 5 (D.C. Cir. 1994)). In adjudicating such questions, courts are bound to construe evidentiary privileges strictly. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (internal citations omitted).

The DOC asserts that this "April 25th Memo was produced and sent to the Department of Corrections legal counsel for review and was part of the general give-and-take of deliberations and legal advice." (Doc. 68, at 20). A review of the redacted document disclosed on April 1, 2025 demonstrates that it is an internal decision memo to the Superintendent of SCI-Smithfield from the Director of Bureau of Health Care Services concerning Bicking's disability accommodations request that has been copied to multiple individuals at the Office of Chief Counsel. (Doc. 53-3). The DOC has established that the attorney-client and work product privileges apply to these pages. The declaration of the DOC Secretary Harry states

11

that the memo contains legal advice (Doc. 68-4, at 10) and the privilege log refers to a handwritten note (Doc. 68-6). Likewise, as an internal memo used to make a determination, the deliberative-process privilege applies. (Doc. 68-4). Furthermore, according to the DOC Secretary Harry's statement, a memo is provided to inmates seeking an ADA accommodation explaining the rationale behind any ADA accommodation determination. (Doc. 68-4).

      Bicking challenges the deliberative process privilege in his brief in support of his motion by asserting that the DOC did not properly assert the privilege and that the privilege is waived by the delayed responses by the DOC. (Doc. 53). However, following the November 14, 2025 disclosure, which identified the other privileges raised and provided the required documentation to assert those privileges, Bicking did not supplement his briefing or file a reply to address the attorney-client and work product privileges. Neither did he file anything additional demonstrating why privileged material should nevertheless be produced. The Court is left with the statements made in his initial motion and briefing: "[t]his is information in the exclusive control of the defendant and plaintiff has no other way of obtaining the requested information," (Doc. 53, at 4); "these documents go to the heart of the claim that plaintiff's request for a reasonable accommodation was impermissibly denied and may also support his coercion and retaliation claims," (Doc. 48, at 6); and "[t]hese same documents (DOC000482-DOC000483) identify an assessment by Medical Director Dave Edwards, and other pertinent records and documents. None of these records, assessments, or other documents were provided despite a clear request for such information, (Doc. 48, at 6). In reviewing the redacted document, there is no reference to the Medical Director Dave Edwards. (Doc. 53-3; Doc. 68-10.) Additionally, Bicking should have been provided a statement from the DOC as to why his ADA request was denied according to the process set

forth in Secretary Harry's declaration. (Doc. 68-4). Bickings' general assertions that these documents are vital to his claim are insufficient to justify that the privileges should be overcome. As such, the Court finds that Bicking has not met his burden and will deny his motion to compel.

### 5. Response Seven

Bicking's request for production is as follows: "A copy of any and all reports generated by SCI Smithfield medical staff pursuant to defendant's Procedure Manual 13.1.1.8.E1 and all responses." (Doc. 68-1, at 3). In the April 1, 2025 response, the DOC provided the following three objections: (1) the request is overly broad, burdensome, and disproportionate to the needs of the case; (2) the request seeks communications or other documents that are protected by the attorney-client privilege, work product doctrine, or other privilege; and (3) the request seeks documents containing information pertaining to another inmate. (Doc. 68-2, at 13-14). As an answer the DOC, without waiving the above objections, points to the medical records from May 2019 to May 2024. (Doc. 68-2, at 15). In the November 14, 2025 supplemental disclosure, the DOC raises the objection that the request seeks to invade its deliberative process privilege. (Doc. 68-3, at 16-17). As an answer, without waiving any privileges, the DOC cites to the previously produced medical records and the newly produced ADA file for Bicking. (Doc. 68-3, at 17).

> Bicking disagrees with the objections as follows:
>
> What is overly broad and burdensome is the defendant dumping over 1,000 pages of mostly immaterial documents dating from 2019 when the complaint clearly indicates it is based, with one exception, on actions occurring after June []23, 2021. Plaintiff has no need for, nor does he seek, any information about other individuals. Information regarding misconduct by or within a government agency should not be afforded any evidentiary protection. This matter would not be where it is at the present time had the defendant not engaged in gross misconduct resulting in violation of federal law.

(Doc. 48, at 6). Again, Bicking has only asserted that he disagrees with the objections raised. He does not state what he seeks to be produced that has not been produced thus far by the DOC. As such the Court is unable to order production of unknown documents. Bicking's motion to compel will be denied in full.

B. DEADLINE FOR DISPOSITIVE MOTIONS AND SETTLEMENT RESPONSE

On December 10, 2025, the DOC filed a motion for an extension of time to file dispositive motions after observing that in the final discovery extension the Court did not extend the deadline for dispositive motions. (Doc. 71). Since that time, the DOC has also filed a motion for judgment on the pleadings. (Doc. 78.) This pending motion is potentially dispositive. Therefore, the Court will grant the DOC's motion for an extension of time for motions for summary judgment with the caveat that such motions shall be due within thirty days of the Court entering an order on the pending motion for judgment on the pleadings.

Likewise, the DOC's motion for an extension to respond to Bicking's request for a settlement officer (Doc. 77) will be granted with a deadline set fourteen days following this Court's order addressing the motion for judgment on the pleadings.

The Court will enter a briefing schedule regarding the motion for judgment on the pleadings in the order accompanying this memorandum.

C. BICKING'S MOTION FOR SANCTIONS

Bicking filed a motion for sanctions against the DOC on December 31, 2025. (Doc. 74). In this motion and the brief in support, Bicking reiterates the claims made in the motion to compel concerning the DOC's alleged delay in responding to discovery requests and seeks sanctions in the form of ordering an in-camera review of multiple documents and attorney

fees. (Doc. 74; Doc. 75). As discussed above, there were multiple factors that lead to the DOC's delay in discovery and both parties agree that they were in communication throughout this delay. Therefore sanctions will be denied.

The DOC's motion for an extension to time to reply to Bicking's motion for sanctions will be denied as moot.

D. THE DOC'S MOTION TO AMEND THE ANSWER

On December 4, 2025, the DOC obtained new counsel in this action. (Doc. 70). On December 6, 2025 the DOC filed a motion seeking to preserve its jury demand on all claims and requests for relief sought against it. (Doc. 76.) Allegedly, the demand by the DOC was inadvertently left out of the answer by prior counsel. (Doc. 76). In light of the review of the newly appointment counsel that this was overlooked at the time the answer was filed, the Court will grant the DOC's motion and deem the DOC's jury demand as timely filed and served.

III. CONCLUSION

For the foregoing reasons, Bicking's motion to compel will be denied. The Court will set a briefing schedule for the motion for judgment on the pleadings and the DOC's motions for an extension of time in line with this briefing schedule. Additionally, the Court will deny Bicking's motion for sanctions and grant the DOC's motion to deem its jury demand timely filed.

An appropriate order follows.

Dated: January 20, 2026                                  *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**