**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GUY BICKING,<br><br>Plaintiff<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | CIVIL ACTION NO. 3:24-CV-00422<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion for judgment on the pleadings filed by the Defendant in this action, the Pennsylvania Department of Corrections ("DOC"). (Doc. 78). The DOC's motion challenges only one of the claims raised in the complaint. While the Court will grant the motion for judgment on the pleadings, the claim will proceed on the remaining claims set forth in the complaint.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Guy Bicking ("Bicking"), who is an inmate currently housed at the State Correctional Institution Benner ("SCI-Benner") in Bellefonte, Pennsylvania, initiated this action by filing a Complaint alleged violations of the Americans with Disabilities Act ("ADA") by the DOC, which was received and docketed by the Court on March 12, 2024. (Doc. 1). Bicking then paid the filing fee in full, and the Court forwarded the waiver of service form to the DOC. (Doc. 4; Doc. 5).

Following some extensions by the Court, the DOC answered the Complaint on November 22, 2024. (Doc. 24). The DOC amended its answer on February 6, 2025. (Doc. 35). On January 13, 2026, the DOC filed a motion for judgment on the pleadings. (Doc. 78).

Following an extension of time, Bicking filed a brief in opposition on February 24, 2026. (Doc. 86). On March 9, 2026, the DOC filed a reply brief. (Doc. 87). On April 6, 2026, Bicking filed a combined motion to file a sur-reply and sur-reply. (Doc. 89).

The Court will now address the pending motion to file a sur-reply and motion for judgment on the pleadings.

## II. DISCUSSION

### A. SUMMARY OF COMPLAINT

In the complaint, Bicking alleges that he suffered a heart attack and was diagnosed with an Ejection Fraction of 30 percent on May 23, 2011. (Doc. 1, at 2). He states that despite the reduced Ejection Fraction, he was working with no ill effects until being vaccinated for COVID-19. (Doc. 1, at 2). Bicking alleges that the DOC mandated that any inmate who wanted to continue working was required to be vaccinated against COVID-19. (Doc. 1, at 2). Bicking states that he received the vaccine so he could continue working in the library. (Doc. 1, at 2). Bicking alleges that on June 23, 2021, he suffered a stroke from accumulation of micro-clots caused by the vaccine and he required hospitalization. (Doc. 1, at 2). He states that while being treated for the stoke, it was determined that his Ejection Fraction was 20 percent. (Doc. 1, at 2). On June 25, 2021, his Ejection Fraction had improved to 25 percent. (Doc. 1, at 2). On June 27, 2021, while preparing for release from the hospital, Bicking was recommended a portable defibrillator or "lifevest" pending implantation of an implantable cardio-defibrillator ("ICD") 0..and was told if he did not take this treatment option he would be returned to SCI-Huntingdon. (Doc. 1, at 2). Bicking states that he refused the "lifevest," was discharged, and was transported to the infirmary at SCI-Smithfield. (Doc. 1, at 3).

Bicking alleges that on June 28, 2021, medical personnel at SCI-Smithfield attempted to impose the "lifevest" on him. (Doc. 1, at 3). Bicking refused both verbally and by signing

a Release of Medical Liability form. (Doc. 1, at 3). Bicking states that on July 13, 2021, he was informed that he had been transferred from SCI-Huntingdon, with a right to return, to SCI-Smithfield to limit the distances he would have to walk. (Doc. 1, at 3). Bicking alleges that he was not admitted to the Regional Infirmary, but was placed in Housing Status pursuant to DOC Procedure Manual 13.2.1. (Doc. 1, at 3). Bicking alleges that on November 22, 2021, a request for reasonable accommodation was sent to CHCA Alexa ("Lidwell"). (Doc. 1, at 4). Bicking states that on December 6, 2021, a request seeking a status update on the accommodation was went to Lidwell. (Doc. 1, at 4). Bicking states that on December 11, 2021, Medical Director Dave Edwards ("Edwards") informed him that housing in the infirmary would be permanent unless Bicking waived his right to refuse medical treatment and "agreed to have unwanted and needless surgery that would not correct his low Ejection Fraction." (Doc. 1, at 4). He states that Edwards stated that the cardiologist could override the need for ICD surgery. (Doc. 1, at 4).

Bicking alleges that on December 23, 2021, a grievance was filed concerning the lack of response to the Disability Accommodation request and that on January 6, 2022, the grievance was denied as premature because the accommodation request was being processed. (Doc. 1, at 4). Bicking alleges that on January 26, 2026 he saw Dr. Flores, a cardiologist at Blair Medical Associates, who stated that Bicking was not a candidate for ICD surgery. (Doc. 1, at 5).

Bicking states that on February 3, 2022, Edwards, without any evaluation of his ability to perform tasks, entered the following work restrictions in his records: "no intensive labor, no pushing or pulling heavy load." (Doc. 1, at 5). Bicking alleges that Edwards told him on a weekly basis that unless he "complied with medical demands" he would continue to be

housed in the infirmary unit, there would be no return to SCI-Huntingdon, and no return to his job. (Doc. 1, at 5).

Bicking states that his Reasonable Accommodation was denied on May 5, 2022 stating that work is not a major life event and referenced Bicking's refusal of treatment as a basis for the denial. (Doc. 1, at 5-6). Bicking filed a grievance on May 6, 2022 concerning the denial of his Reasonable Accommodation Request. (Doc. 1, at 6). Bicking alleges that he followed all grievance steps with the final appeal denial dated August 10, 2022. (Doc. 1, at 6).

Bicking alleges that on July 13, 2022, further tests showed his Ejection Fraction had improved to 35 percent. (Doc. 1, at 6). Bicking states that on August 3, 2022, Edwards told him that even with the improved Ejection Fraction, he would not be allowed to return to SCI-Huntingdon unless he agreed to surgery. (Doc. 1, at 6). Bicking alleges that Edwards may have a pecuniary interest in all ICD surgery referrals made to Blair Medical Associates. (Doc. 1, at 6).

Bicking alleges that on October 4, 2022, the medical department at SCI-Smithfield determined that Bicking would be medically unemployed for three years, or until October 3, 2025. (Doc. 1, at 6-7). Bicking states that this determination was made without a physical exam. (Doc. 1, at 7).

Bicking alleges that in November, Edwards was removed from his position and the Medical Director at SCI Huntingdon, Dr. Mahli, was assigned to cover both SCI-Huntingdon and SCI-Smithfield. (Doc. 1, at 7). Bicking states that on December 12, 2022, he was seen by a cardiologist not associated with Blair Medical Associates and it was determined that ICD was necessary and he was medically cleared for all activities including work and sports. (Doc. 1, at 7). On December 19, 2022, Dr. Mahli cleared Bicking to return to SCI-Huntingdon.

(Doc. 1, at 7). On December 28, 2022, Dr. Mahli saw Bicking at SCI-Smithfield and asked why he had not yet returned to SCI-Huntingdon. (Doc. 1, at 7). On January 12, 2023, Bicking was transferred to SCI-Benner. (Doc. 1, at 7). Bicking alleges that he asked the nurse at intake at SCI-Benner why he was not returned to SCI-Huntingdon, and the nurse told him that he should not have disagreed with medical while at SCI-Smithfield. (Doc. 1, at 7).

Elsewhere in the complaint, Bicking alleged that the DOC denied him access to the outside yard with the general population and was limited to two hours in the afternoon in a separate, medical yard. (Doc. 1, at 8).

Based on the above alleged facts, Bicking raised a claim under Title II of the Americans with Disabilities Act ("ADA") based on a denial of his access to work, recreational activity, and returning to SCI-Huntingdon. (Doc. 1, at 7–9). He also brought a claim based on the denial of the request for accommodation that would allow him to return to work, that he was coerced or intimidated for exercising his rights guaranteed by the ADA, that he was retaliated against for exercising his rights, and that his due process rights were violated. (Doc. 1, at 9–11).

B. BICKING'S MOTION TO FILE A SUR-REPLY

Bicking has filed a motion to file a sur-reply and a sur-reply in a combined document. (Doc. 89). The Court will grant Bicking's motion and has considered the sur-reply in the following determination on the DOC's motion for judgment on the pleadings.

C. THE DOC'S MOTION FOR JUDGMENT ON THE PLEADINGS

After the pleadings are closed, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts utilize the same standards for motions for judgments on the pleadings pursuant to Rule 12(c) as that for a motion to dismiss pursuant to Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("there is no material difference in the

applicable legal standards"). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also* *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also* *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

The DOC argues that Bicking has not stated a cognizable claim under Title II of the ADA because he is raising an employment discrimination claim. (Doc. 79). The motion for judgment on the pleadings is silent as to Bicking's ADA claims concerning a denial of recreational activities and housing at SCI-Smithfield. (Doc. 79).

Title II of the ADA proscribes discrimination against a "qualified individual with a disability." *See* 42 U.S.C. § 12132 (stating that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"). Courts have clearly held that Title II applies to state-operated correctional facilities. *See Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997), *aff'd sub nom., Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Modern prisons provide "recreational 'activities,' medical 'services,' and educational and vocational 'programs.'" *Pennsylvania Dep't of Corr.*, 524 U.S. at 210. The phrase "service, program, or activity" under Title II of the ADA is "extremely broad in scope and includes anything a public entity does." *Disability Rts. New Jersey, Inc. v. Comm'r, New Jersey Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015). Thus, in this case, housing and exercise equipment and access, all qualify as services, programs, or activities, under the broad statutory definition. 42 U.S.C. § 12132.

In contrast, this Court has concluded that an employment-discrimination claim is not cognizable under Title II of the ADA. *Positano v. Pennsylvania Department of Corrections*, No. 3:16-CV-01570, 2018 WL 3521191 at *9–10 (M.D. Pa. 2018); *see also Humphrey v. Pa. Dept. of Corrections*, No. 23-109J, 2024 WL 5414807, at 12 (W.D. Pa. 2024) (adopting the Seventh Circuit's finding in *Neisler v. Tuckwell*, 807 F.3d 225, 227 (7th Cir. 2015) that a typical prison

job is not a service or a program under the ADA). Therefore, the DOC's motion for judgment on the pleadings will be granted and judgment will be entered in favor of the DOC on the ADA claim associated with his lost employment.

However, the case will proceed as the DOC did not challenge all the ADA claims raised in the complaint. Specifically, the DOC did not address the alleged denial of recreation and housing under Title II, the claim of a denial of a reasonable accommodation under Title I, the claims of coercion and intimidation prohibited by the ADA, the claim of retaliation, and the claim of a violation of due process. The Court acknowledges that the DOC raised a qualified immunity defense but characterized that defense as applying to the alleged "right to not be placed on work restrictions for his typical prison job when he had just returned from hospitalization due to stroke and had a pre-existing heart condition, and was refusing medical care." (Doc. 79, at 7–8). Therefore, even the qualified immunity defense did not address the additional claims raised in the complaint.

As such, without making a finding as to the viability of the remaining claims, the Court will direct that the case proceed on the claims the DOC did not challenge in its motion for judgment on the pleadings: (1) the Title II of the ADA claim associated with the denial of recreation and housing; (2) the Title I of the ADA claim associated with the denial of a reasonable accommodation by an employer; (3) the claim of coercion or intimidation for exercising his rights guaranteed by the ADA; (4) the retaliation claim; and (5) the due process claim.

## III. CONCLUSION

The Court grants Bicking's motion to file a sur-reply. The DOC's motion for judgment on the pleadings is granted and judgment will be entered in the DOC's favor on the

employment discrimination claim under Title II of the ADA. Since this motion only challenged the employment discrimination claim under Title II of the ADA and not the remaining claims raised in the complaint, the case will move forward on the remaining five claims.

An appropriate Order follows.

**Dated: August 26, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**